**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

_____

**SPRINTCOM, INC.,**

        Plaintiff,

v.                                            No. CIV 06-0702 BB/RLP

**CLARENDON NATIONAL
INSURANCE COMPANY**,

        Defendant.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendant Clarendon National Insurance Company's ("Defendant") February 21, 2007 motion for partial summary judgment as to its duty to indemnify (Doc. No. 29), Plaintiff Sprintcom, Inc.'s ("Plaintiff") March 12, 2007 cross-motion for partial summary judgment as to Defendant's duty to defend (Doc. No. 40), and Plaintiff's May 9, 2007 motion for leave to file a supplemental reply (Doc. No. 60).  Having reviewed the submissions of the parties and the relevant law, the Court finds that Plaintiff's cross-motion for partial summary judgment as to Defendant's duty to defend should be GRANTED; Defendant's motion for partial summary judgment as to its duty to indemnify should be DENIED; and Plaintiff's motion for leave to file a supplemental reply should be DENIED.

### Standard for Reviewing a Motion for Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  In evaluating a motion for summary judgment, the court views

the evidence and draws all reasonable inferences therefrom in the light most favorable to the

nonmoving party.  *See Martin v. Kansas*, 190 F. 3d 1120, 1129 (10th Cir. 1999).  However, it is

"not required to evaluate every conceivable inference which can be drawn from evidentiary

matter, but only reasonable ones."  *Lucas v. Dover Corp.*, 857 F.2d 1397, 1401 (10th Cir. 1988).

## Background

The matter currently before the Court is an insurance coverage action that has its genesis

in a business dispute involving Digital Creations, Inc., ("Defendant's Insured" or "Insured")[1] and

Alamosa Properties LP ("Plaintiff").[2]

### The Commercial Transaction

On March 16, 2005, Defendant's Insured petitioned the Bureau of Land Management

("BLM") to approve an assignment to itself of a lease/right-of-way for a communications tower

(the "Tower") in Las Cruces, New Mexico and to change the authorized use from television

broadcasting to "a low power Microwave site for date communications."  *See* Def.'s Mot. Partial

S.J., Ex. B, pp. 334-35, 343 ("Dept. of Interior Decision") (Doc. No. 29).  Nine days later, before

it had received a response from the BLM, Defendant's Insured subleased space on the Tower for

cellular telephone purposes to Plaintiff pursuant to a lease agreement (the "Lease Agreement"),

in which Defendant's Insured warranted that it had full authority to enter into the Lease.  *See*

---

[1]  Southwest Wireless Net is a division of Digital Creations, Inc. and hereinafter will also be referred to as "Defendant's Insured."  *See* Def.'s Mot. Partial S.J., ¶ 3 (Doc. No. 29); Pl.'s Compl., Ex. C, ¶ 5 ("Pl.'s Second Am. Compl.") (Doc. No. 1).

[2]  Sprintcom, Inc., the Plaintiff in the current action, was formerly known as Alamosa Properties, LP, the plaintiff in the underlying litigation.  These two entities will collectively be referred to as "Plaintiff."

Def.'s Mot. Partial S.J., ¶ 4; Pl.'s Compl., Ex. C, ¶ 5 ("Pl.'s Second Am. Compl.") (Doc. No. 29).  This Lease was expressly subject to Defendant's Insured's lease with the BLM.  *See* Def.'s Mot. Partial S.J., Ex. C. ¶ 11 ("Lease Agreement"); Pl.'s Second Am. Compl., ¶ 6.

Less than two months into the Lease term, on May 4, 2005 and, again, on May 10, 2005, the BLM informed Defendant's Insured that it could not sublease the Tower for cellular telephone purposes.  *See* Dept. of Interior Decision, p. 334, 334 n.13.  Accordingly, on May 17, 2005, the BLM approved the change of use from television transmission to wireless Internet service, and explicitly limited subleasing to wireless Internet service providers (as opposed to cellular telephone service providers).  *See id.*, pp. 335, 343.

A little more than a week later, BLM officials observed Plaintiff's contractors installing cellular telephone equipment on the Tower and issued Defendant's Insured a May 25, 2005 "Notice of Cease and Desist" ordering it to "immediately remove the cellular antenna."  *See* Dept. of Interior Decision, pp. 335-36.  Then, on July 6, 2005, the BLM issued a Trespass Decision/Notice to Remove, finding that Defendant's Insured had willfully trespassed and ordering it to remove the cellular phone equipment from the Tower within fifteen days of receiving the notice.  *See* Dept. of Interior Decision, p. 337.

For the first time on July 20, 2005, more than two months after first learning of this problem, Defendant's Insured informed Plaintiff that it could not sublease the Tower for cellular telephone purposes.  *See* Def.'s Mot. Partial S.J., ¶ 18; Pl.'s Second Am. Compl., ¶ 12.  Subsequently, on or about August 17, 2005, the BLM removed Plaintiff's cellular phone equipment from the Tower.  *See* Dept. of Interior Decision, p. 338; Pl.'s Second Am. Compl., ¶ 16.

**The Underlying Litigation**

Based on the foregoing events, Plaintiff filed a complaint against Defendant's Insured on August 12, 2005. *See* Pl.'s Compl., Ex. A (Doc. No. 1). It then filed a first amended complaint on October 5, 2005, *see* Pl.'s Compl., Ex. B, and a second amended complaint on January 25, 2006. *See* Pl.'s Second Am. Compl.. The second amended complaint stated claims against Defendant's Insured for breach of contract, negligent and/or intentional misrepresentation, negligence, violation of New Mexico's Unfair Trade Practices Act, indemnity, and wrongful eviction. *See* Second Am. Compl., ¶¶ 17-39.

In late 2004, Defendant had issued its Insured a commercial general liability policy ("Policy"). *See* Def.'s Mot. Partial S.J., Ex. A ("Policy"). Accordingly, after receiving notice of the suit against it, Defendant's Insured's attorney submitted a tender of defense and indemnity to Defendant on January 9, 2006. *See* Def.'s Resp. to Pl.'s Cross-Mot. S.J., Ex. A ("Effective Claims Management Ltr.") (Doc. No. 46). Defendant's Insured included a copy of the second amended complaint with this tender. *Id.* Frank Pope, Jr., the Litigation Manager for Defendant's third-party administrator, responded to Defendant's Insured's tender with a January 12, 2006 letter, in which he requested additional information about the claim.[3] *Id.* Defendant's Insured's attorney responded to this request for information with a January 18, 2006 letter that provided the requested information and invited Mr. Pope "to call [her] for any explanation that is needed." *See* Pl.'s Reply to Def.'s Resp. to Cross-Mot. S.J., Ex. G ("Nunez Neumann Ltr.") (Doc. No. 50). Mr. Pope received this response to his letter, and did not request any additional information from

---

[3] Mr. Pope is an attorney as well as an insurance adjuster. *See* Pl.'s Resp. to Def.'s Mot. S.J. and Cross-Mot. S.J., Ex. A., p. 15:15 ("Pope Depo. I") (Doc. No. 39).
.

Defendant's Insured.  *See* Pl.'s Reply to Def.'s Resp. to Cross-Mot. S.J., Ex. A., p. 70:2-16 ("Pope Depo. II.").

Approximately a month later, on February 21, 2006, after not receiving any response to the demand for a defense, Defendant's Insured's attorney sent another letter to Mr. Pope asking "whether you are going to help defend your client."  *See* Pl.'s Reply to Def.'s Resp. to Cross-Mot. S.J., Ex. H ("Nunez Neumann Ltr. II").  Mr. Pope does not dispute that he received this letter.  Pope Depo. II, p. 72:1-9.  Mr. Pope claims that he responded to this letter by calling Defendant's Insured's attorney and leaving a voice-mail.  *Id.*   However, the telephone records produced by Defendant's third-party administrator do not reflect any outgoing phone calls to the attorney for Defendant's Insured after January 19, 2006, which conflicts with Mr. Pope's statement that he placed such a call in late February 2006.  *See* Pl.'s Reply to Def.'s Resp. to Cross-Mot. S.J., Ex. D ("Phone Records").  Further, Mr. Pope concedes that leaving a voice-mail message was not a sufficient effort to ensure that a defense was being provided to Defendant's Insured.  *See* Pope Depo., pp. 59:1-15; 71:4-9.  Aside from the contested voice-mail message, Defendant never responded to the initial tender of defense or any of the subsequent communications from Defendant's Insured.  *Id.* at 58:5-25.

In the absence of any communication from its Insured, Digital defended itself against Plaintiff's claims and ultimately entered into a Stipulated Judgment on the second amended complaint for $508,022.42.  *See* Pl.'s Compl., ¶ 28.  As part of this settlement, Defendant's Insured assigned to Plaintiff its rights against Defendant.  *See* Pl.'s Compl., ¶ 17.

Plaintiff subsequently filed this declaratory judgment action against Defendant.

**Discussion**

Plaintiff claims that it is entitled to summary judgment because Defendant owed its Insured a duty to defend it, and breached this duty.  Plaintiff contends that the duty to defend arose because its claim(s) against the Defendant's Insured "potentially" or "arguably" fell within the stated coverage of the Policy.[4]

Defendant does not dispute that it failed to defend its Insured against Plaintiff's claims. Defendant contends, however, that the claims alleged in the underlying suit were not "potentially" or "arguably" within the substantive coverage of the Policy.  It therefore argues that it had no duty to defend (and thus no duty to indemnify) and is entitled to summary judgment.

For the reasons set forth below, the Court finds, as a matter of law, that Defendant did have a duty to defend its Insured in the underlying suit, and that it breached this duty.  There is no issue of material fact precluding a ruling on the duty to defend, and partial summary judgment will be entered for Plaintiff on this issue.  As a result of Defendant's breach of the duty to defend, it is precluded from raising coverage defenses.  Thus, Defendant's motion for partial summary judgment as to its duty to indemnify must be denied.

**I.     Plaintiff's Cross-Motion for Partial Summary Judgment as to Defendant's Duty to Defend**

      **A.     The nature and scope of the duty to defend**

Under New Mexico law, "[t]he obligation of an insurance company to indemnify is independent of its obligation to defend." *Servants of Paraclete, Inc. v. Great Am. Ins. Co.*, 857

---

[4]  In addition, Plaintiff seeks statutory and punitive damages and attorney's fees from Defendant for violations of the New Mexico Unfair Insurance Practices Act, bad faith, breach of contract, and violations of the New Mexico Unfair Trade Practices Act. *See* Compl., ¶¶ 36-71. These claims are not currently before the Court.

F. Supp. 822, 829 (D.N.M. 1994); *Lujan v. Gonzales*, 501 P.2d 673, 677 (N.M. App. 1972).  The

test is not the ultimate liability of the insurance company, but is based solely on the allegations of

the complaint.  *State Farm Fire & Cas. Co. v. Price*, 684 P.2d 524, 528 (N.M. App. 1984),

*overruled on other grounds*, *Ellingwood v. N.N. Investors Life Ins. Co.*, 805 P.2d 70 (N.M.

1991)).  "If the allegations on the face of the complaint are 'potentially' or 'arguably' within the

scope of coverage, the insurer is obligated to defend."  *Servants*, 857 F. Supp. at 829; *Am. Gen.*

*Fire & Cas. Co. v. Progressive Cas. Co.*, 799 P.2d 1113, 1116 (N.M. 1990).  "Only where the

allegations are completely outside policy coverage may the insurer justifiably refuse to defend."

*Price*, 684 P.2d at 528.  Finally, "[a]ny doubt about whether the allegations are within policy

coverage is resolved in the insured's favor."  *Id*; *Valley Improvement Ass'n, Inc. v. U.S. Fid. &*

*Guar. Corp.*, 129 F.3d 1108, 1120 (10th Cir. 1997).  It is immaterial that relief of a type not

covered by the policy may also be sought against the insured, or that relief for alleged acts not

covered by the policy may also be sought, as long as the claimant has "pleaded any grounds

against the insured coming within the terms of the policy."  *Am. Employers' Ins. Co., v. Cont'l*

*Cas. Co.*, 512 P.2d 674, 677 (N.M. 1973); *W. Heritage Ins. Co. v. Chava Trucking Co.*, 991 F.2d

651, 656 (10th Cir. 1993) ("Although certain claims in the underlying state court action may

have been outside the policy, other claims clearly were within the scope of the policy.").

    In this case, Defendant acknowledges that its Insured included the second amended

complaint with its tender of defense and indemnity.  *See* Effective Claims Management Letter.

The second amended complaint therefore is the operative pleading for analyzing whether any of

Plaintiff's claims "potentially" or "arguably" come within the terms of the Policy.

**B.      Defendant's confusion is persuasive evidence of ambiguity**

Plaintiff presents evidence that, at a minimum, Defendant itself is in doubt about whether

the allegations in the second amended complaint fall within the terms of the Policy.  Specifically,

Mr. Pope testified that he believed Defendant had a duty to defend its Insured and that it

breached this duty:

> Q.      Now, Mr. Pope, do you agree with me that [Defendant]
> owed a duty of defense to its [I]nsured in this case?
>
> A.       I think so, yes.
>
> Q.      And you agree with me that [Defendant] did not provide a
> defense for its insured in this case?
>
> A.      They never assigned it, yes.

Pope Depo., p. 106:6-15.3.  Mr. Pope's testimony carries significant weight because he was the

person Defendant identified as being responsible for adjusting Plaintiff's claims and as the

person who determined whether or not provide a defense of those claims.  *See* Pl.'s Reply to

Def.'s Resp. to Cross-Mot. for Partial S.J., Exhibit B ("Answers to Pl.'s Interrogs. Nos. 1-4").

Despite Mr. Pope's stated belief that Defendant owed its Insured a duty to defend,

Defendant has taken the position, in these pleadings and in its interrogatory answers, that it did

not owe such a duty.  *See* Pope Depo. II, p. 116:5-24.  However, adding to the confusion, Mr.

Pope testified that he disagreed with Defendant's interrogatory answers on the issue of the duty

to defend.  Specifically, Mr. Pope's deposition contains the following testimony regarding

Defendant's answer to Interrogatory Number 4:

> Q.      Interrogatory Number 4 says, "Please 'identify each person,
> their job title and their address who reviewed and/or made
> or took part in the evaluation of whether to provide or not

8

to provide a defense of the [underlying] litigation and/or indemnification of claims brought in the [underlying] litigation, and provide a detailed description of the actions taken in said evaluation."

Your answer, you say . . . "No decision was made on the issue of the duty to defend prior to the institution of the present suit by plaintiff because the claim fell off diary." That's an incorrect statement; isn't that true, Mr. Pope.

A.    I would say so, yes.

Q.    Because based upon your testimony here today, you did make a decision to defend the insured?

A.    That's correct.

Pope Depo. II, p. 116:5-24.

Mr. Pope testified that Defendant's answer to Interrogatory Number 18 was likewise

incorrect:

Q.    Interrogatory Number 18 asks[,] "Please state the factual and legal basis for [Defendant's] denial that the [underlying] litigation alleged facts establishing that [Defendant] had a duty to defend its insured." Do you see that?

A.    Yes, sir.

Q.    Based on your testimony here today, isn't it true, Mr. Pope, that you determined that [Defendant] did have to defend its insured?

A.    That was my take, yes.

Q.    Okay.  So, the, the answer to Interrogatory Number 18 would be inaccurate; isn't that correct.

[Defendant's counsel objects to the form of the question.]

A.    I don't know if I would call it inaccurate.  Maybe not complete.

9

> Q.     Well, the answer to Interrogatory Number 18 lists a whole litany of reasons why there was no duty to defend; however, you have indicated there was a duty to defend.
>
> A.     That was my determination at the time that I had the claim, yes.

Pope Depo. II., p.143:15 - p. 144:10.

These disagreements are particularly problematic for Defendant because Mr. Pope was responsible for verifying the truthfulness of Defendant's answers to Plaintiff's interrogatories. *See* Pl.'s Reply to Def.'s Resp. to Cross-Mot. Partial S.J., Exhibit C ("Verification").

Obviously, Defendant itself is (or was) confused about whether it owed its Insured a duty to defend against the underlying lawsuit.  While this evidence of Defendant's doubt is not dispositive, it is "persuasive evidence of the policy's [or the complaint's] ambiguity." *King v. Travelers Ins. Co.*, 505 P.2d 1226, 1232 (N.M. 1973).  As set forth above, under New Mexico law, "[t]he insurer is required to resolve ambiguities in favor of potential coverage." *Valley Improvement*, 129 F.3d at 1116 (citing *Price*, 684 P.2d at 528).  Again, if a complaint's allegations "potentially" or "arguably" fall under the coverage of the insurance policy, the insurer is obligated to defend.  *See Progressive*, 799 P.2d at 1116.  Defendant's apparent confusion about whether Plaintiff's allegations fell within the terms of the Policy is evidence of its ambiguity, and this ambiguity very strongly suggests Defendant owed its Insured a duty to defend.[5]

---

[5]  Mr. Pope believed Defendant's duty to defend was triggered by Plaintiff's wrongful eviction cause of action.  *See* Pope Depo. I, p. 41:16-25.  As set forth below, the Court concludes that, as a matter of law, Plaintiff's negligent misrepresentation cause of action "potentially" or "arguably" falls within the terms of the Policy and therefore triggered Defendant's duty to defend.  Thus, there is no need to analyze the wrongful eviction count as an additional trigger for the duty to defend.

### C.       Defendant owed its Insured a duty to defend as a matter of law

As explained above, in considering whether Defendant had a duty to defend Plaintiff in the underlying litigation, the Court must determine whether any of the causes of action in the second amended complaint "potentially" or "arguably" fall within the terms of the Policy.  In conducting this analysis, it is important to note that the interpretation of the terms of an insurance policy is a matter of law.  *See Valley Improvement*, 129 F.3d at 1115.

One of the causes of action Plaintiff asserts in the second amended complaint is that of negligent misrepresentation.  To sufficiently state a claim for negligent misrepresentation in New Mexico, a plaintiff must allege that:  1) the defendant made a material misrepresentation of fact to the plaintiff; 2) the plaintiff relied upon such representation; 3) the defendant knew the representation was false at the time it was made or made the representation recklessly; and 4) the defendant intended to induce the plaintiff to rely on such representation.  *See Saylor v. Valles*, 63 P.3d 1152, 1158 (N.M. App. 2003).[6]  Importantly, negligent misrepresentation can arise where, as here, a failure to disclose information is alleged.[7]  *See* UJI 13-1632 NMRA 2000.

---

[6]  New Mexico follows follows the tort of negligent misrepresentation as set forth in Restatement (Second) of Torts.  *See Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 750 P.2d 118, 123 (N.M. 1988).

[7]  Obviously, a failure to disclose presupposes a duty to disclose.  In this regard, when a failure to disclose is alleged in the context of a negligent misrepresentation claim, three distinct relationships between the parties can give rise to such a duty:

> 1. Where there is a previous definite fiduciary relation between the parties.

> 2. Where it appears one or each of the parties to the contract expressly reposes a trust and confidence in the other.

> 3. Where the contract or transaction is intrinsically fiduciary and

In setting forth the negligent misrepresentation cause of action, Plaintiff alleges: "[Defendant's Insured] . . . should have known that it was not authorized to lease space on its Communications Tower to a cellular phone provider and failed to inform Plaintiff that the BLM would oppose the installation of Plaintiff's cellular phone equipment."  Second Am. Compl., ¶ 23.  Thus, the second amended complaint appears to suggest that the negligent misrepresentation claim concerns statements made by Defendant's Insured prior to and separate from the contract. Further, the second amended complaint alleges, in conformity with the elements set forth above, that:  1) Defendant's Insured negligently misrepresented to Plaintiff that it was authorized to lease space on the Tower for cellular telephone purposes; 2) Plaintiff relied on this misrepresentation in installing its equipment on the Tower and entering into service agreements with cellular phone customers; 3) Defendant's Insured made the misrepresentation recklessly; and 4) Plaintiff was harmed as a result of Defendant's Insured's misrepresentation when BLM removed its cellular phone equipment from the Tower.  *See* Second Am. Compl, ¶¶ 21-28.  Thus, the second amended complaint states a claim for negligent misrepresentation.  The question, then, is whether this claim "arguably" or "potentially" comes within the terms of the Policy.

---

calls for perfect good faith. The contract of insurance is an example of this last class.

*R.A. Peck, Inc. v. Liberty Fed. Sav. Bank*, 108 N.M. 84, 89 (N.M. Ct. App. 1988).  This Court finds that the allegations in the second amended complaint sufficiently describe a relationship as set out in number two above, and therefore Defendant owed Plaintiff a duty to disclose.

###### 1.      The Policy's terms

In considering Defendant's argument that it did not owe its Insured a duty to defend against this claim, it is useful to review the relevant terms of the Policy.  Under the Policy's property damage liability provision, Defendant agreed to "pay those sums that the insured becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."  Policy, p.1.  Defendant's Policy "applies to . . . 'property damage' only if . . . [it is] caused by an occurrence.'"  *Id*.  "Property damage" is defined in the policy as: a) physical injury to tangible property . . . or b) loss of use of tangible property that is not physically injured.[8] *Id*. at p.15.  "Occurrence is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id*.  Additionally, the Policy's property damage liability provision includes a contractual liability exclusion.  *Id*. at p.2.

###### a.      The contractual liability exclusion

In arguing that it did not owe its Insured a duty to defend the negligent misrepresentation claim, Defendant contends that the allegations underlying Plaintiff's claims sound only in contract and therefore, along with the contract claims, the negligent misrepresentation claim should be barred by the contractual liability provision.  Importantly, however, in *Cust-O-Fab Service Company, LLC v. Admiral Insurance Company*, the Tenth Circuit considered and rejected a similar argument in the specific context of a negligent misrepresentation claim.  2005 U.S. App. LEXIS 27063 (10th Cir. 2005).  In particular, the Tenth Circuit explained:

> The district court . . . found that since the breach of contract
> exclusion relieved [the insurance company] of its duty to defend on

---

[8]  Defendant does not dispute that the BLM's removal of Plaintiff's cellular telephone equipment falls within the definition of "property damage."

> breach of contract claims, the remaining negligence claims were
> not covered. In other words, because the negligent
> misrepresentation claim was simply a variation of the contract, it
> fell away with the contract exclusion.

*Cust-O-Fab*, 2005 U.S. App. LEXIS at **14.  Continuing, however, the Tenth Circuit stated,

"We disagree that the contract exclusion necessarily applies to the . . . negligent

misrepresentation claim." *Id*.  It then explained that this conclusion was based on the fact that

under Texas law, "negligent misrepresentation is a separate and distinct claim from breach of

contract."  *Id*.  (citing *Airborne Freight Corp. v. C.R. Lee Enters., Inc.*, 847 S.W.2d 289, 295

(Tex. App. Ct. 1992).  Additionally, and importantly, the Tenth Circuit concluded that the

alleged negligent misrepresentation in *Cust-O-Fab* could be construed as arising from events

temporally distinct from the conduct giving rise to the breach of contract claims.  *Id*. at 128.

    Obviously, Texas law does not control the analysis in this case.  However, under New

Mexico law – like Texas law – negligent misrepresentation is a separate and distinct claim from

breach of contract. *See Segura v. Molycorp, Inc.*, 636 P.2d 284 (N.M. 1981); *Banks v. R.E.*

*Williams Constr. Servs. Co.*, No. CIV 02-445 BB/WWD (D.N.M. 2003) ("[A] plaintiff may

allege a defendant's promise was the basis of a contract or a tortious misrepresentation.").

Indeed in New Mexico, "[t]he claim [of negligent misrepresentation] arises from the common

law obligations among the parties, *not* from a contract."  *Nance v. L.J. Dolloff Assocs., Inc.*, 126

P.3d 1215, 1219 (N.M. App. 2005) (emphasis added).  Moreover, as in *Cust-O-Fab*, the

misrepresentation claim here appears to be based on allegations concerning conduct that is

temporally distinct and separate from the actions giving rise to the breach of contract claims.

Thus, the reasoning in *Cust-O-Fab* is directly applicable to this case.

### b.      The "legally obligated to pay" requirement

The Policy's property damage liability provision states that Defendant will pay damages

that its Insured becomes "legally obligated to pay as damages" for "property damage" caused by

an "occurrence."  The Tenth Circuit has held that the phrase "legally obligated to pay" refers only

to claims sounding in tort and not to claims sounding in contract.  *See VBF, Inc. v. Chubb Group*

*of Ins. Cos.*, 263 F.3d 1226, 1231 (10th Cir. 2001).  As previously noted, Defendant argued that

Plaintiff's negligent misrepresentation claim was nothing more than a variation of its breach of

contract claim(s) and therefore was subject to the contractual liability exclusion.  Based on its

premise that the negligent misrepresentation claim was nothing more than a dressed-up contract

claim, Defendant further argued that the allegations in the second amended complaint did not

satisfy the "legally obligated to pay" requirement because they sounded only in contract.

However, for the reasons set forth above, the second amended complaint states a negligent

misrepresentation claim independent of the breach of contract claims and this tort claim satisfies

the "legally obligated to pay requirement."  *See VBF, Inc.*, 263 F.3d at 123.

### c.      The "occurrence" requirement

Defendant also argues that the allegations in the second amended complaint do not allege

an "occurrence" as defined by the Policy.  Although the term "occurrence" is defined in the

Policy as "an accident," the word accident is not similarly defined.  Because the term accident is

not defined within the Policy, it "must be interpreted in its usual, ordinary and popular sense."

*O'Rourke v. New Amsterdam Cas. Co.*, 362 P.2d 790, 792 (N.M. 1961).  In this regard, the New

Mexico Supreme Court has stated that an accident "denotes an unlooked for mishap, or an

untoward event which is not expected or designed."  *Id.*  Importantly, "an insurance policy

designed to compensate for damages suffered by 'accidental means' is no less effective when the damages result from negligence." *King*, 505 P.2d at 1229.

Defendant, again, bases its argument that the "occurrence" requirement is not satisfied on the (faulty) premise that all of Plaintiff's claims sound in contract, arguing that a breach of contract does not constitute an "accident. " However, the relevant question is not whether a breach of contract qualifies as an "occurrence," but whether a negligent misrepresentation does. The parties have not cited any New Mexico case law on this point, and the Court has likewise been unable to locate any New Mexico authority concerning this issue. In fact, the American Law Reports annotation collecting and discussing cases analyzing whether a negligent misrepresentation constitutes an "accident" or "occurrence" under a policy of liability insurance does not include a single New Mexico case. *See* H. Brent Brennenstuhl, *Negligent misrepresentation as "accident" or "occurrence" warranting insurance coverage*, American Law Reports, 58 A.L.R.5th 483 (5th ed. 1998).

Since New Mexico law is unclear on this point, this Court must predict how the New Mexico Supreme Court would resolve the issue and in doing so should consider "decisions of other states, and the general weight and trend of authority." *See Armijo v. Ex. Cam, Inc.*, 843 F.2d 406, 407 (10th Cir. 1988). Other jurisdictions are split on whether an alleged negligent misrepresentation, which induces an opposing party to enter into a commercial transaction, could constitute an "accident" and therefore an "occurrence" covered by an insurance policy. *See Negligent misrepresentation as "accident" or "occurrence" warranting insurance coverage*, 58 A.L.R.5th 483. The outcome in these cases generally depends on where the court begins. Those cases that focus on the act of making a representation hold a negligent misrepresentation cannot

16

be an "occurrence" when it is defined as synonymous with "accident" since the communication

involved was made intentionally.  *See, e.g., Green v. State Farm Fire & Cas. Co.*, 127 P.3d 1279,

*¶¶ 23-24, 31 (Utah App. 2005); *Tschimperle v. Aetna Cas. & Sur. Co.*, 529 N.W.2d 421, 424

(Minn. App. 1995).  Other courts define an "occurrence" or "accident" as an injury resulting

from the negligence of the insured.  *See Wood v. Safeco Ins. Co. of Am.,* 980 S.W.2d 43, *50

(Mo. App. 1998)*; Sheets v. Brethren Mut. Ins. Co.,* 679 A.2d 540, 551 (Md. App. 1996)*.  The

difference is whether the court focuses on the fact the false representation was made intentionally

or whether the focus is on the unintended consequences of the speech.  As a Rhode Island

Superior Court noted:

> Negligent misrepresentation indeed involves an intentional act, but
> that act is speech, not misrepresentation.  Speech is intentional in
> the same way that driving an automobile is intentional.  An
> automobile accident - often the paradigm example of negligence -
> is certainly unintentional.  Extending the analogy, the tort of
> negligent misrepresentation is better understood as an unintentional
> misstatement - an "accident."

*Travelers Indem. Co. v. Children's Fund and Serv., Inc., 2005 WL 3276224 (R.I. Super. Ct.*

*2005), slip op. at *8; see also Aetna Cas. & Sur. Co. v. Metropolitan Baptist Church*, 967 F.

Supp. 217, 223 (S.D. Tex. 1996) ("A negligent misrepresentation causes an injury that is

unexpected, from the viewpoint of its maker.").

　　　　Having considered these cases, this Court finds it likely that the New Mexico Supreme

Court would conclude that an alleged negligent misrepresentation qualifies as an "accident" and

therefore an "occurrence" covered by an insurance policy.  In particular, this Court believes the

New Mexico Supreme Court would adopt the rationale of *First Newton*, which holds that "[t]he

very definition of 'negligent misrepresentation' connotes negligent rather than intentional

17

conduct." *First Newton Nat'l Bank v. Gen. Cas. Co.*, 426 N.W.2d 618, 625 (Iowa 1998).[9]  This

holding is in harmony with the New Mexico Supreme Court's conclusion that "negligent

misrepresentation is grounded in negligence rather than an intent to deceive."  *Golden Cone*

*Concepts, Inc., v. Villa Linda Mall*, 820 P.2d 1323, 1327 (N.M. 1991) (citing *Nichols v. Safeco*

*Ins. Co.*, 671 P.2d 1151 (N.M. Ct. App. 1983)).  This Court also agrees that when the policy

covers an "occurrence," "where a complaint is framed in terms of an insured's negligence . . .

there is a duty to defend."  *First Newton*, 426 N.W. 2d at 625-26; *see also Reinsurance Ass'n of*

*Minnesota v. Timmer*, 641 N.W.2d 302, 313 (Minn. App. 2002); *Am. States. Ins. Co. v. Cooper*,

518 So. 2d 708, 710 (Al. 1987).

Having concluded that the New Mexico Supreme Court would find, as a matter of law,

that a negligent misrepresentation claim can constitute an "accident" and therefore an

"occurrence" for purposes of a commercial general liability policy, the Court must now consider

whether the second amended complaint adequately alleges that the misrepresentation at issue was

negligent.

### 2.      Application to second amended complaint

In conducting this analysis, it is important to keep in mind the standard of review in the

duty to defend context.  Specifically, "[t]he insurer must . . . fulfill its promise to defend even

though the complaint fails to state facts with sufficient clarity so that it may be determined from

its face whether or not the action is within the coverage of the policy, provided the alleged facts

tend to show an occurrence within the coverage."  *Found. Reserve Ins. Co. v. Mullenix*, 642 P.2d

---

[9]  Like New Mexico, Iowa has adopted the Restatement (Second) of Torts' definition of
negligent misrepresentation.  *First Newton*, 426 N.W.2d at 625.

604, 605-606 (N.M. 1982); *Valley Improvement*, 129 F.3d at 1116.  In this regard, the court must

construe all ambiguities in favor of the insured.  *Valley Improvement*, 129 F.3d at 1116.  For

example, in *Valley Improvement*, the Tenth Circuit, applying New Mexico law, held that an

insurer had a duty to defend where the complaint, although ambiguous, "could [be] construed as

stating a claim" within the policy.  *Valley Improvement*, 129 F.3d at 1116.  In that case, the

plaintiffs in the underlying tort action sought compensation for damages caused by cattle grazing

on their property within a real estate development.  The insurer declined to defend its insured

against the lawsuit because it "assumed" that the damaged properties were either owned or

controlled by its insured (not the plaintiffs), thereby bringing the claims within an exception to

the policy's coverage.  *Id.* at 1116.  However, the Tenth Circuit stated that "although [the

insurer's] inference that [the insured] had exercised control over the [damaged properties] . . .

might be reasonable, it certainly is not the only reasonable inference to be drawn from the

broadly-worded pleading."  *Id.*  The Tenth Circuit then concluded that since the allegations did

not specify who exercised control over the damaged properties (and thus left open the possibility

that the plaintiffs exercised such control), the complaint "could have been construed as stating

claim" within the terms of the coverage.  *Id.* at 1117.

Much like the allegations in *Valley Improvement*, the second amended complaint in this

case is broadly-worded and somewhat ambiguous.  In addition, the factual allegations are sparse.

However, as indicated previously, the second amended complaint does set forth three important

allegations.  First, "Plaintiff entered into . . . [the Lease Agreement] dated March 25, 2005, with

[Defendant's Insured]."  Second Am. Compl., ¶ 5.  Second, the pleadings suggest that the

misrepresentation occurred prior to the execution of the Lease Agreement.  Specifically, the

second amended complaint states, "[Defendant's Insured] . . . failed to inform Plaintiff that the

BLM would oppose the installation of Plaintiff's cellular phone equipment." *Id.* at ¶ 23.  Third,

as permitted by Federal Rule of Civil Procedure 8(a), the second amended complaint alleges,

alternatively, that this misrepresentation was either negligent or intentional:  "[Defendant's

Insured] either negligently or intentionally misrepresented to Plaintiff that it was authorized to

lease space on [the Tower] to a cellular phone provider.  [Defendant's Insured's] false

representation was either known to [Defendant's Insured] or was recklessly made in disregard for

the truth, or was made without exercising ordinary care." *Id.* at ¶ 22.

Accordingly, the Court finds that these averments give rise to two equally reasonable

inferences:  1) Defendant's Insured intended to represent to Plaintiff that it was authorized to

sublease the Tower for cellular telephone purposes knowing such representation was false or 2)

Defendant's Insured intended to represent that it was authorized to sublease the Tower for

cellular telephone purposes but did not intend such representation to be false.  Thus, the Court

finds that it could reasonably inferred from the allegations in the second amended complaint that

the Defendant's Insured's misrepresentation resulted from negligence.  Therefore, this Court

concludes that Plaintiff's allegations "could be construed as stating a claim" within the terms of

the Policy's coverage, and, accordingly, Defendant owed its Insured a duty to defend.  *See Valley*

*Improvement*, 129 F.3d at 1116-17.

### 3.    Summary

In sum, as a matter of the law, the Court finds that the negligent misrepresentation cause

of action in the second amended complaint "potentially" or "arguably" falls within the terms of

the Policy because 1) the allegations underlying this claim sound in tort; 2) these allegations

would place the negligent misrepresentation claim outside the contractual liability exclusion; 3) the tortious allegations satisfy the "legally obligated to pay requirement"; 4) the New Mexico Supreme Court would likely conclude that a claim for negligent misrepresentation would constitute an "accident" and therefore an "occurrence" under the terms of the Policy; and 5) the (somewhat ambiguous) factual allegations in the second amended complaint could be construed as alleging that Defendant's Insured's misrepresentation was the result of negligence.  Therefore, Defendant owed its Insured a duty to defend against the underlying lawsuit, and breached this duty.

## II.    Defendant's Motion for Partial Summary Judgment as to the Duty to Indemnify

In *Valley Improvement*, the Tenth Circuit held that when an insurer breaches its duty to defend, it is precluded from subsequently raising coverage defenses.  129 F.3d at 1125-26. Specifically, the Tenth Circuit stated, "Because we have affirmed the district judge's holding that USF&G breached its duty to defend, USF&G will not be heard to complain that the claims might not have been within the coverage."  *Id.*  Quoting language from the New Mexico Court of Appeals, the Tenth Circuit continued: "When an insurance company unjustifiably fails to defend it becomes liable for a judgment entered into by the insured in good faith."  *Id.* at 1125 (citing *Price*, 684 P.2d at 531. The only limitation noted by the court on the insurer's subsequent liability is that the settlement must be reasonable.  *Id.* at 1126; *see also State Farm Fire & Cas. Co. v. Ruiz*, 36 F. Supp. 2d 1308, 1318 (D.N.M. 1999) (holding that because insurer breached the duty to defend it "may no longer raise any coverage defenses and is liable for the amount of the settlement, at least to policy limits, to the extent that the settlement was reasonable and entered into in good faith.").  These decisions are in harmony with the New Mexico Court of Appeals'

recent decision in *Garcia v. Underwriter at Lloyd's London Legion Indemnity Company*, 156

P.3d 712, (N.M. App. 2007), *cert. granted*, NM. LEXIS 137 (N.M. Apr. 9, 2007). In that opinion

the Court of Appeals held:

> The crucial issue [the courts] must decide [is] whether there was an
> unjustified failure to defend by [the insurance company] after
> demand (to defend is made) by [the insured]. If the question is
> answered "no" then policy defenses may be applicable. On the
> other hand, if the answer is "yes", then [the insurance company]
> may not rely on any policy defenses."

*Id*. at 723.

Given the foregoing law, the Court holds that Defendant has waived its coverage defenses

as a consequence of its breach of the duty to defend and therefore denies Defendant's motion for

partial summary judgment as to its duty to indemnify.

The parties have not briefed nor put forth evidence regarding the good faith nature or

reasonableness of the settlement entered into between the Defendant's Insured and the Plaintiff in

the underlying litigation.  Therefore the Court will not consider these issues at this time.

**III.    Plaintiff's motion for leave to file a supplemental reply**

Plaintiff moves to file a supplemental brief in light of "new case law" decided by the New

Mexico Court of Appeals in *Garcia v. Underwriters at Lloyd's London Legion Indemnity*

*Company*.  As set forth above, the Court has considered this opinion and therefore no additional

briefing is necessary. Thus, Plaintiff's motion is denied.

<u>Conclusion</u>

Based on the foregoing, Plaintiff's cross-motion for partial summary judgment as to

Defendant's duty to defend is GRANTED; Defendant's motion for partial summary judgment as

to its duty to indemnify is DENIED; and Plaintiff's motion for leave to file a supplemental reply

is DENIED.


      SO ORDERED this 2$^d$ day of August, 2007.


                                        _____

                                        BRUCE D. BLACK
                                        UNITED STATES DISTRICT JUDGE


**Attorneys:**

**For Plaintiff**
Christopher B. Bauman

**For Defendant**
Daniel W. Lewis
Brant L. Lillywhite